William MINOR, Plaintiff and Appellee,

v.

SULLY BUTTES SCHOOL DISTRICT # 58–2, Brian Meyer, Tony Todd, Cliff DeSautell, Lillian Wright, Don Burgeson and Superintendent Don Rykhus, Defendants and Appellants.

Nos. 14205, 14211.

Supreme Court of South Dakota.

Considered on Briefs Sept. 28, 1983.

Decided Feb. 15, 1984.

Linda Lea M. Viken of Finch & Viken, Rapid City, for plaintiff and appellee.

Charles M. Thompson of May, Adam, Gerdes & Thompson, Pierre, for defendants and appellants.

DUNN, Justice.

This is an appeal from a judgment of the circuit court in a teacher contract dispute. We affirm in part and reverse in part.

In August of 1982, appellants Sully Buttes School District # 58–2, the members of the Sully Buttes board of education, and Sully Buttes superintendent Don Rykhus (School District) found themselves in the position of losing their band instructor and needing another for the upcoming school year. Appellee William Minor (Minor), a music teacher and resident of Minnesota, saw a bulletin about the job opening and sent an application to School District. On August 27, 1982, at the request of School District, Minor traveled to Onida, South Dakota, for an interview and discussed the job with the superintendent and chairman of the board of education. They informed him that he would undergo a two-week "trial period" of teaching because the board could not meet for another two weeks to approve or disapprove his contract. Minor refused to take the position on a trial basis, so he was told that a contract would be prepared for him to sign. Minor accepted the position on that basis.

Minor returned to Onida on August 30, 1982, to begin teaching and was given the contract document to sign. After signing it, he returned the document to the superintendent, but it was never signed by any officials of School District. During the period before the contract could be approved, Minor had problems with the band. Consequently, School District refused to approve the contract with Minor and terminated him after nine days of teaching.[1] Minor appealed the decision of School District to circuit court, seeking a determination that a contract existed between him and School District.[2] The court concluded that no contract existed, but that Minor had incurred

---

1. Minor was paid for the nine days he taught for School District.

2. SDCL 13–46–1 allows any aggrieved person or any party to the proceedings to appeal a decision made by a school board to the circuit court.

compensable damages because of School District's actions.

School District raises two issues on appeal: 1) Since the trial court found that there was no contract between the parties, was it error for the court to award damages to Minor? 2) Are the damages awarded to Minor excessive? On notice of review, Minor raises two issues: 1) Should School District be estopped from denying that a contract existed between School District and Minor? 2) If a contract existed, did School District properly terminate Minor?

In order to deal with these issues in a logical fashion, we shall first consider the question of whether a contract existed between School District and Minor. Minor contends that strict compliance with SDCL 13–43–4 is not necessary for the existence of a contract between a school district and a teacher, and that by its actions in giving a contract document to Minor and allowing him to teach for nine days School District should be estopped from denying the existence of a contract. We disagree.

■ SDCL 13–43–4 states: "A teacher shall be employed only upon written contract signed by the teacher and by the president of the school board and business manager of the school district." It is well settled that when by statute the mode and manner in which contracts of a school district may be entered into are limited and any other manner of entering into a contract is expressly or impliedly forbidden, a contract not made in compliance therewith is invalid. *Schull Const. Co. v. Webster Ind. School Dist. No. 101,* 86 S.D. 475, 198 N.W.2d 512 (1972); *Seim v. Independent Dist. of Monroe,* 70 S.D. 315, 17 N.W.2d 342 (1945); 68 Am.Jur.2d Schools § 142 (1973).

■ The precise wording of SDCL 13–43–4 ("A teacher shall be employed *only* ...." [emphasis added]) makes clear that any attempt by a school district and a teacher to enter into a contract without following the statutory language is forbidden. Since neither the president of the school board nor the business manager of School District signed the document in question, we must conclude that no contract came into existence. The statutorily mandated method for teachers and school districts to enter into contracts simply has not been met.

■ Minor is also incorrect in claiming that a contract exists by virtue of estoppel, thus overcoming the strict requirements of SDCL 13–43–4. In *Bak v. Jones County,* 87 S.D. 468, 210 N.W.2d 65 (1973), a county commission asked a contractor to repair certain roads, but they failed to follow the statutorily mandated requirements in making the contract. The contractor worked for about a month with the full knowledge of the commission. Even under those facts, we held that any contract entered into without complying with the statutes was null and void. We stated that it would be contrary to public policy to allow one to evade contract provisions which have been enacted by law for the protection of the public merely by arguing implied contract theories. Therefore, despite the actions of School District in this case, no contract existed. Only if all the requirements of SDCL 13–43–4 are met is there a contract between a school district and a teacher.

■ In light of our holding on the question of the existence of a contract, we need not deal with Minor's other contention. The statutory requirements which a school district must fulfill before terminating a teacher apply only to individuals under contract.

We deal next with School District's contention that if there is no contract there can be no breach of contract and, consequently, no damages can be awarded to Minor. The trial court awarded $1,612.98 in damages to Minor despite finding that no contract existed.

■ Even when there is no valid contract between the parties, a trial court can, applying the doctrine of detrimental reliance, find that an individual was unjustly harmed and is entitled to damages. The doctrine of detrimental reliance (also called

promissory estoppel) may be invoked in the following situation: a promise, apparently made in good faith, causes the promisee to alter his position to his detriment in the reasonable belief that the promise would be performed. Murray on Contracts § 91 (2d ed. 1974). This court recognized and applied the doctrine of detrimental reliance in *Valley Bank v. Dowdy*, 337 N.W.2d 164 (S.D.1983). *See also* Restatement (Second) of Contracts § 90 (1981). It has been stated that before the doctrine can be applied, a trial court must find: 1) the detriment suffered in reliance must be substantial in an economic sense; 2) the loss to the promisee must have been foreseeable by the promisor; and 3) the promisee must have acted reasonably in justifiable reliance on the promise as made. Simpson on Contracts § 61 (2d ed. 1965).

■ Here, Minor has proven all the elements of detrimental reliance. School District, by preparing the contract document and giving it to Minor to sign after Minor refused to take the position on a trial basis, implied that Minor would have the teaching position for the entire year. This action, in effect a promise, was apparently made in good faith, since School District would have approved and signed the contract at its next meeting if the problems with Minor's teaching had not arisen. Relying upon this action, Minor acted reasonably in altering his position: he moved from Minnesota to Onida, he obtained an apartment, etc.; such actions were clearly foreseeable by School District. The detriment suffered by Minor in reliance upon School District was substantial in an economic sense, amounting to hundreds of dollars of expense for Minor. Therefore, the trial court properly found that even though there was no contract between the parties, since the strict requirements of SDCL 13–43–4 were not met, Minor relied upon School District's actions to his detriment and is entitled to damages.

Finally, we consider School District's claim that the damages awarded to Minor were excessive. The trial court computed the damages as follows:

| | |
|---|---:|
| Moving expense to Onida | $ 234.20 |
| Apartment expense | 567.90 |
| Teaching dues (SDEA) | 200.00 |
| Moving expense from Onida | 236.08 |
| Hearing expense | 374.80 |
| Total | $1,612.98 |

■ We agree with School District's contention that the damages for teaching dues and hearing expenses were excessive and clearly erroneous. First, the South Dakota Education Association (SDEA) is a voluntary association. Minor did not have to join SDEA in order to teach at Sully Buttes, whether the teaching was for a "trial period" or under a teaching contract. Therefore, it cannot be said that Minor's SDEA dues expense was caused by the actions of School District; Minor was free to join or not to join the organization. Second, the hearing expense refers to those costs incurred by Minor in returning to South Dakota to attend the hearing in this action. We note that it was Minor who brought this controversy into the court system of this state; he appealed to the circuit court, seeking relief from alleged wrongs of School District. Since the legal action was initiated by Minor and was totally of his choosing, we hold that it was error to award him damages for the expense of getting to the hearing.

■ The damage award for apartment expense and moving expense is totally proper, however. Minor simply would not have moved from Minnesota to Onida but for his reliance on School District and the implications that a teaching position would be available to him. If Minor had not taken the position in Onida, he would not have had the apartment expense, since he was living with his parents in Minnesota. Thus, both of these expenses were caused by School District's actions and damages should be awarded to Minor.

The judgment of the circuit court is affirmed, but we reverse on the question of damages and remand for recalculation of damages.

FOSHEIM, C.J., and WOLLMAN, J., concur.

HENDERSON, J., concurs in part and dissents in part.

MORGAN, J., dissents.

HENDERSON, Justice (concurring in part, dissenting in part).

## ALTERNATIVE WRIT OF MANDAMUS

On October 26, 1982, the circuit court entered an alternative writ of mandamus commanding the School District to allow William Minor to continue teaching in the school district or, in the alternative, pay him the full amount of the contract.

William Minor's affidavit in support of this proceeding expressly stated, under oath, "That it will be impossible for Plaintiff to seek another job until at least semester time; that Plaintiff has no plain, speedy and adequate remedy in the ordinary course of law; the arbitrary and summary dismissal of the Plaintiff by the Defendants, if not remedied, will cause irreparible [sic] harm to Plaintiff for which he has no adequate remedy or action at law." Said affidavit prayed for a Writ of Mandamus requiring the defendants to "forthwith cease and desist from hiring a replacement for him, and further for an Order requiring them to allow him to teach in the school district, or in the alternative directing them, as a consequence of the breach of their contract to pay him the full amount of the contract due him."

The school district answered essentially with a two-pronged defense: (1) that if William Minor had a contract, he had a plain, speedy and adequate remedy in law and that he should pursue it by a breach of action theory; (2) that a Writ of Mandamus would not lie for a discretionary act. Concerning defense number two, the school district took the position that it had a right to employ a teacher in the first instance per SDCL 13-8-39, SDCL 13-20-1, and had the discretion to fire a teacher at any time for plain violation of contract involving gross immorality, incompetency, or flagrant neglect of duty via SDCL 13-43-15.

## DECISION OF LOWER COURT ON MANDAMUS ACTION

A Memorandum Decision was entered by the lower court on November 23, 1982. Findings of Fact and Conclusions of Law were entered pursuant thereto. A Judgment of Dismissal was entered denying the alternative Writ of Mandamus. Neither the Findings of Fact, Conclusions of Law, nor the Judgment bear a date. The instruments all state: "Dated this ____ day of _____, 1982." However, the documents were all filed on April 11, 1983. The essential part of the lower court's formal holding is that the facts are in dispute and *"there is no clear right of the plaintiff to receive the relief sought* [emphasis supplied mine]; that the plaintiff has a plain and adequate remedy at law; that there are conflicting claims that must be settled as to whether a contract did in fact exist; that there does not exist sufficient grounds for the issuing of an alternative writ of mandamus." Hence, Judgment of Dismissal of the Alternative Writ of Mandamus was entered. Perforce, William Minor was not, through Court Order, permitted to continue teaching and the school district was not required to pay him the full amount of the contract. Both of these remedies were sought and both were denied.

## SCHOOL BOARD DECISION—DE NOVO TRIAL

An award of damages against a school district, predicated upon a decision of a school district refusing to continue the employment of a teacher, can it exist in a de novo trial of a school board decision? I believe not.

This action was an appeal under SDCL 13-46-1 (Appeals in School Matters). Under SDCL 13-46-6, it was tried de novo. As such, under the precedent of *Dale v. Bd. of Educ.*, 316 N.W.2d 108, 111 (S.D. 1982), "[t]he type of de novo hearing in the circuit court is thus limited in nature ...." Furthermore, as held in *Busker v. Bd. of Educ. of Elk Point*, 295 N.W.2d 1 (S.D. 1980), it is not a true trial de novo. The circuit court had absolutely no authority to award damages in this type of a special

proceeding. It had no original jurisdiction to do so. It had a right to enter findings of fact and conclusions of law with respect to one matter, and one matter only, and that matter was whether the school board's decision could pass muster under the South Dakota Administrative Procedures Act, SDCL 1-26-36. The circuit judge held, and correctly so, that William Minor had no contract of employment, thus affirming the one legal issue which was before him. Conclusion of Law III states: "Since there was not a strict compliance with SDCL 13-43-4, no binding contract exists." Therefore, the circuit judge determined the school board acted legally, and he was not "clearly erroneous" in his determination thereof. *See Dale*, 316 N.W.2d at 112.

The notice of appeal was filed on December 7, 1982, under SDCL 13-46-3, from the decision of the school board dated September 13, 1982, which decision was to refuse to continue the employment of William Minor for the 1982-83 school year. No request or pleading was presented in the appeal to the lower court for damages for breach of contract or under any other type of legal theory. No such request would have been legally tenable. Damage actions are not triable in school board appeals.

Throughout the entire proceedings, from the inception of the alternative writ of mandamus, to and through these appellate proceedings, the school district has steadfastly maintained orally in the lower court, by written proposed findings of fact and conclusions of law, and by this appeal that William Minor cannot be awarded damages in this proceeding. I agree. If William Minor had an action at law for damages it was outside of the arena of a de novo hearing on an appeal taken from a decision by a school board under SDCL 13-46-1. *See Ellis v. Herrick Ind. Sch. Dist.*, 71 S.D. 7, 9, 20 N.W.2d 516, 517 (1945), for this language:

> If the teacher has exercised his right of appeal to the circuit court, as provided by the statute, and if it has been finally determined on the appeal that he was wrongfully dismissed, he may maintain an action in any court of competent jurisdiction for the recovery of any damages sustained by him as a result.

Notwithstanding the trial court's recognition that there must be a strict compliance with SDCL 13-43-4, as specifically set forth in Conclusion of Law III of the lower court's formal decision, the trial court independently decided to paint with an equity brush. The equity brush, with colors (theories) therebefore unseen, painted an award of damages. Conclusion of Law IV expresses:

> Appellant having relied on the statements and indications of both the Superintendent and to some extent the president of the school board to his detriment which resulted in a number of expenses incurring to him, *this Court in the exercise of its equitable powers will hold the Board responsible for the following damages* of the Appellant:

| | | |
|---|---|---|
| Moving expenses to Onida | — | $234.20 |
| Apartment expenses | — | 567.90 |
| Teaching dues expenses | — | 200.00 |
| Moving from Onida expenses | — | 236.08 |
| Hearing expenses | — | 374.80 |
| Total | — | 1612.98 |

(Emphasis supplied.) An award of damages is a radical departure from the settled law of this state and the intent of the legislature which established an appeal from school board decisions.

Though I recognize the doctrine of detrimental reliance, it cannot spring forth like spontaneous combustion in a school board appeal, as such an appeal by statute and decisions is most restrictive in nature. I would have it die by appellate collapse.

Therefore, I dissent to the award of any damages in this proceeding; let William Minor come forward in an action at law for damages under such theory which he believes he can sustain in the proper arena, whereupon due proceedings in law may precipitate as in any action praying for consequential damage.

MORGAN, Justice (dissenting).

I dissent from that portion of the majority opinion which denies Minor's claim that a contract exists by virtue of estoppel, thus

I do not reach the damage issue. This court has set out the elements of equitable estoppel:

> In order to constitute an equitable estoppel or estoppel in pais, false representations or concealment of material facts must exist; the party to whom it was made must have been without knowledge of the real facts; that representations or concealments must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his injury.... There can be no estoppel if any of these essential elements are lacking, or if any of them have not been proved by clear and convincing evidence. (citations omitted)

*Cromwell v. Hosbrook*, 81 S.D. 324, 329, 134 N.W.2d 777, 780–1 (1965).

The record is clear that Minor refused a proffered two-week trial period at the outset. By tendering a contract, accepting it back with Minor's signature, and then failing to complete it, the officials duped Minor into a two-week trial period. That Minor relied on the contract to his injuries without question for the trial court and the majority of this court have awarded him damages. The essential elements are abundantly clear.

I recognize that the doctrine of estoppel is rarely applied against municipalities and that the same rule applies to school districts. The bulk of the cases in which municipalities have been protected from estoppel claims involve right-of-way encroachments, annexation enactments, or rate-making ordinances. Estoppel is understandably denied when the public interest outweighs a potential claim, such as in the cases listed above; however, the rule goes on to state that estoppel may be applied "where there is manifest injustice."

In *City of Rapid City v. Hoogterp*, 85 S.D. 176, 180, 179 N.W.2d 15, 17 (1970), this court quoted, with favor, McQuillan, The Law of Municipal Corporations, 3rd Ed., § 30.181 (1981):

> "While the doctrine of equitable estoppel is sometimes invoked in what are termed 'exceptional cases,' it is always applied, and wisely so, with much caution to municipal corporations in matters pertaining to their governmental functions. The basis of its application usually is not because of nonaction by municipal officers but because they have taken some affirmative action influencing another which renders it inequitable for the municipality to assert a different set of facts."

In *Missouri River Telephone Co. v. City of Mitchell*, 22 S.D. 191, 116 N.W. 67 (1908), and *Tubbs v. Custer City*, 52 S.D. 458, 218 N.W. 599 (1928), estoppel was granted because each city took some affirmative action which influenced another. In this case, the school district acted affirmatively and influenced Minor.

*Bak v. Jones County*, 87 S.D. 468, 210 N.W.2d 65 (1973), cited in the majority opinion, is simply not applicable. *Bak* involved a public works contract. The decision was predicated on the claimant's failure to comply with public bidding requirements as a condition precedent to a valid contract with a municipal corporation. *Bak* at 68–69. That simply is not the case here. Minor refused to move on a two-week trial basis. He was then tendered a written contract which he signed and immediately began to perform. After his performance, the school board paid him without argument. To follow the majority reasoning to its logical conclusion, that payment was illegal. I think that it was the school board's acknowledgement that there was a contract.

I would reverse the trial court on the estoppel issue and remand for further proceedings to determine damages for breach of the contract.